ACCEPTED
04-15-00691-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/6/2015 4:14:49 PM
KEITH HOTTLE
CLERK

## NO. 04-15-00691-CV

# Fourth Court of Appeals
# San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/6/2015 4:14:49 PM
KEITH E. HOTTLE
Clerk

ARMANDO HERNANDEZ and NANCY HERNANDEZ, Appellants,

V.

MARIO SALDIVAR and FERNANDO SALDIVAR, Appellees.

---

**APPELLEES' RESPONSE TO APPELLANTS' MOTION
TO EXTEND TIME TO FILE NOTICE OF APPEAL**

---

On appeal from the 150th Judicial District Court, Bexar County, Texas
Case No. 2014-CI-17077
Honorable Barbara Nellermoe, Presiding

---

Jeffrey A. Hiller
State Bar No. 00790883
jhiller@ccn-law.com
CACHEAUX, CAVAZOS & NEWTON, LLP
333 Convent Street
San Antonio, Texas 78212
(210) 222-1642
Royal B. Lea, III
State Bar No. 12069680
royal@binghamandlea.com
BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
(210) 224-1819

*COUNSEL FOR APPELLEES,
MARIO SALDIVAR AND FERNANDO
SALDIVAR*

## Introduction

The Court should deny the Motion to Extend for two reasons. First, Appellants offer no reason or excuse at all for failing to file the notice of appeal on time. And second, Appellants should not rewarded for their conduct described below.

## Argument

First, Appellants offer no reason or excuse for failing to file a notice of appeal within ninety days of the judgment. They offer the excuse that their counsel miscalculated the deadline for filing a supplement to *a motion for new trial in the trial court*. But nothing about that excuse or miscalculation provides any reason or excuse for their not timely filing a notice of appeal on or by the 90-day deadline for filing a notice of appeal (after filing a motion for new trial) in this Court. There is simply no reason offered for why Appellants failed to file a timely notice of appeal. Without even the attempt to explain their failure to meet the deadline, the Motion to Extend should be denied.

Second, Appellants seek leave to file a late notice to appeal the Hon. Barbara Nellermoe's order granting final summary judgment against them for fraud, conspiracy and breach of fiduciary duty, among other things. Given the extraordinary facts of this case, and the unparalleled duplicitous

conduct by the Herandezes, leave should be denied. This Court has some familiarity with the underlying circumstances. See case numbers 04-15-00129-CV and 04-15-00132-CV in this Court.

Armando Hernandez is an admitted, infamous, treacherous thief who used the Catholic Church to victimize the Saldivars and their family. He not only betrayed the Saldivar's trust and stole the Saldivars' family savings and business funds, but he (with the assistance of Nancy Hernandez) violated trial court orders and used the Saldivars' stolen funds to hire lawyers (no doubt, including their recently hired counsel) to escape the consequences of his admittedly criminal conduct.

In fact, Armando Hernandez has been charged and is being prosecuted by the United States of America in Case No. 15-cr-00185, styled *United States of America v. Armando Jesus Hernandez*, United States District Court for the Western District of Texas, San Antonio Division. In that case, Hernandez has pleaded guilty, and has already admitted he stole $45M from the Saldivars, and owes them at least that much. A copy of the written plea agreement between Hernandez and the United States Government in which Hernandez admits he owes the Saldivar family more than $45 million in restitution is submitted with this Response.

Although Appellants offer no explanation for missing the deadline for filing a notice of appeal, they do refer to their untimely supplement to their

3

motion for new trial in the trial court. In their motion for new trial, they say they owe the Saldivars less than the $36 million awarded in the summary judgment. In fact, now in their late filed supplemental motion for new trial they say the overpaid the Saldivars by mere $4 million. Appellees ask the Court to take judicial notice of the motion the Appellants filed in the trial court on November 3, 2015, not for the truth of what the Hernandezes say, but only to see the glaring inconsistency between that motion and the guilty plea in federal court. The Hernandezes entirely fail to tell this Court (and entirely failed to tell the trial court) that Armando Hernandez has already admitted in his guilty plea in his federal criminal case that the actual amount they owe is more than $45 million. Amazingly, the Hernandezes say in their November 3 Motion in the trial Court they gave the FBI the documents that show their overpayment by more than $4 million, but entirely fail to mention or explain the guilty plea and admission of restitution of more than $45 million.

The Hernandezes chose to use the time since they hired their new counsel to misdirect the trial Court with a story about why they owe less than $36 million when, in fact, there is a judicial admission in federal court that they actually owe more than $36 million. They should not be rewarded for their duplicity.

As they have done throughout this litigation (after repeatedly invoking

4

their Fifth Amendment privilege and refusing to testify or provide any information), the Hernandezes essentially ask the Courts to give them more time after they have waited until after the last minute to hire lawyers. And then the Hernandezes once again show their utter inability to show any candor to the Court. Leave should be denied.

## **Prayer for Relief**

Accordingly, Appellees respectfully request this Honorable Court to deny leave to extend the time for Appellants' filing of their Notice of Appeal. Appellees pray for such other and further relief, at law or in equity, as to which they shall show themselves justly entitled.

Respectfully submitted,

Cacheaux, Cavazos, & Newton, LLP
333 Convent Street
San Antonio, Texas 78205
(210) 222-1642 Telephone
(210) 222-2453 Facsimile
jhiller@ccn-law.com

Bingham & Lea, P.C.
319 Maverick Street
San Antonio, Texas 78212
(210) 224-1819 Telephone
(210) 224-0141 Facsimile
royal@binghamandlea.com


By: _/s/ Royal B. Lea, III_
       JEFFREY A. HILLER
       State Bar No. 00790883
       ROYAL B. LEA, III
       State Bar No. 12069680

ATTORNEYS FOR APPELLEES
MARIO SALDIVAR and FERNANDO
SALDIVAR

6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded on this 6th day of November, 2015, via the electronic service system provided through Texas.gov to Appellees' counsel and all other counsel in this matter:

Ricardo G. Cedillo
rcedillo@lawdcm.com
Isaac J. Huron
ihuron@lawdcm.com
DAVIS, CEDILLO & MENDOZA INC
755 E. Mulberry Ave., Ste. 500
San Antonio, Texas 78212

*Counsel for Appellants,*
*Armando Hernandez and Nancy*
*Hernandez*

Gilberto A. Siller
gsiller@sillerlaw.com
THE SILLER LAW FIRM
1580 S. Main Street, Ste. 200
Boerne, Texas 78006

*Receiver*

*/s/ Royal B. Lea, III*
JEFFREY A. HILLER
ROYAL B. LEA, III

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,     )
                             )
     **Plaintiff,**         )
                             )
v.                            )     CRIMINAL NO. SA-15-CR-185-DAE
                             )
                             )
ARMANDO JESUS HERNANDEZ LEAL,  )
                             )
     **Defendant.**       )

## PLEA AGREEMENT

The United States Attorney for the Western District of Texas, by and through the undersigned Assistant United States Attorney, and the Defendant, **ARMANDO JESUS HERNANDEZ LEAL**, personally and by and through Alfonso Cabanas, Attorney for the Defendant, enter into the following plea bargain agreement pursuant to Rule 11(c)(1), Federal Rules of Criminal Procedure:

### Defendant's Agreement to Plead Guilty

Defendant agrees to plead guilty to Count Eight of the Superseding Indictment, which charges him with the offense of money laundering, in violation of Title 18, United States Code §§1956(a)(1)(B) and 2, on or about November 27, 2013.

### Punishment

The offense to which the Defendant is pleading guilty carries the following penalties:

    a.  Maximum prison term: 20 years

    b.  Maximum fine: $250,000.00

    c.  Maximum term of supervised release: 3 years

1

e. A mandatory monetary assessment in the amount of $100.00.

Any term of imprisonment is not subject to parole.

### Advice of Rights, Collateral Consequences, and Waiver of Rights

The Defendant understands that he has the following rights:

1. The right to plead not guilty, or having already so pleaded, to persist in that plea;

2. The right to a trial by jury;

3. The rights at trial to confront and cross-examine adverse witnesses; to be protected from compelled self-incrimination (the right to remain silent); to testify and present evidence; and to compel the attendance of witnesses;

4. The right to be represented by counsel–and if necessary to have the court appoint counsel at public expense–at trial and at every other stage of the proceeding.

By pleading guilty, the Defendant understands that he waives and gives up the first three categories of the rights listed above: the right to plead not guilty, the right to a jury trial, and the rights to confront and cross-examine adverse witnesses, to remain silent, to testify and present witnesses, and to compel the attendance of witnesses at trial. By pleading guilty the Defendant gives up his right to remain silent and convicts himself; there will be no jury trial; no witnesses to prove guilt; no cross-examination or confrontation of witnesses; no opportunity to testify and present evidence; and no opportunity to compel the attendance of witnesses. The Court may require the Defendant to answer truthfully questions about the offense, and the Defendant may be prosecuted if he knowingly makes false statements or gives false answers.

The Defendant understands that in addition to the punishment described above, his guilty plea and conviction may have other or collateral consequences. These consequences may adversely affect such things as the Defendant's right to possess firearms, the right to vote, as well

2

as the immigration status of a defendant who is not a U.S. Citizen. For example, a plea of guilty could result in the loss of a defendant's visa, permanent resident alien status, or other basis for being in the U.S., the deportation or removal of the defendant from the United States, the denial of naturalization, or the ability to ever lawfully enter the U.S. Defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

In addition to giving up the rights described above, the Defendant agrees to give up and waive the following:

**Pretrial Motions:** The Defendant understands that he could raise a number of issues and challenges by pretrial motion, including motions to suppress evidence and to dismiss the charges against him. By entering into this agreement and pleading guilty, the Defendant agrees to give up any and all claims he has made or might have made by pretrial motion, and agrees to the dismissal of any motions that currently are pending.

**Discovery:** In addition to waiving pretrial motions, the Defendant agrees to give up and waive any claims he may have now or may acquire later to any information possessed by the prosecution team that might be subject to disclosure under discovery rules, including the Federal Rules of Criminal Procedure, the *Jencks* Act, local court rules, and Court Orders, including information that might be considered exculpatory or impeaching under *Brady v. Maryland*, and *Giglio v. United States*.

**Appeal:** The Defendant agrees to waive and give up his right to appeal his conviction or sentence on any ground, except in a case in which the sentence imposed by the Court is greater than the maximum sentence authorized by statute.

**Collateral Attack:** The Defendant agrees to waive and give up his right to challenge his

3

conviction or sentence in a post-conviction collateral challenge, including but not limited to a proceedings pursuant to 28 U.S.C. §§ 2241 and 2255; except, the Defendant does not waive his right to raise a challenge based on ineffective assistance of counsel and prosecutorial misconduct. In the event the Defendant makes such a claim, he hereby agrees to waive any claim of attorney/client privilege arising from counsel's representation.

**Attorneys' Fees:** The Defendant hereby stipulates and agrees that he is not entitled to and shall not seek from the United States any attorneys' fees he incurred in connection with this prosecution.

## Defendant's Agreement on Restitution

The Defendant agrees to be held liable to pay restitution to the Saldivar family in the amount of $45,868,260.69.

## Defendant's Agreement to Cooperate

The Defendant agrees to cooperate with the U.S. Attorney's Office, and with law enforcement agents as directed by the U.S. Attorney's Office, as follows:

Defendant agrees to make a good faith effort to pay any fine, forfeiture, or restitution ordered by the Court.

Before or after sentencing, the Defendant agrees to provide, upon request by the Court, the U.S. Attorney's Office, or the U.S. Probation Office, in whatever form requested, accurate and complete financial information, and to submit sworn statements and give depositions under oath concerning all assets and his ability to pay.

The Defendant also agrees to surrender and release any assets, money, or other property, whether or not derived from the commission of crimes, as well as any information about said assets, in order to satisfy any fine, forfeiture or restitution order entered by the Court.

4

This includes signing any waivers, consents, or releases required by third parties.

The Defendant agrees to identify any transfer of assets made for the purpose of evading or defeating financial obligations, and to refrain from making any such transfers.

If the Defendant agrees to restitution, or if the Court orders restitution, the Defendant agrees to the immediate sale of any properties he owns and that the proceeds of those sales shall be applied to any order of restitution. Defendant agrees to take any reasonable actions requested by the government to facilitate payment of restitution.

The Defendant further agrees to cooperate with the U.S. Attorney's Office and law enforcement authorities as requested in the investigation and prosecution of other criminal offenses. That cooperation includes, but is not limited to, the following:

1. Provide complete and truthful information to the U.S. Attorney's Office and law enforcement officers about Defendant's knowledge of any and all criminal activities of all persons, including all documents or other materials requested by the government, including permission to access materials held by third parties;

2. Provide truthful testimony in any grand jury, trial or other proceeding;

3. Request continuances of sentencing hearings as necessary, until the cooperation has been completed;

4. Disclose any contacts with co-defendants or subjects of any investigation, including attorneys and others acting on their behalf;

5. Refrain from committing any additional criminal offenses, and comply with conditions of release imposed by the Court;

6. Cooperate with the government to identify, surrender, and forfeit any assets the Defendant obtained directly or indirectly from or used to facilitate illegal conduct.

5

In exchange for Defendant's cooperation in the investigation and prosecution of other offenses, the United States Attorney's Office for the Western District of Texas agrees that:

1. The government will not use any truthful statements, testimony or information provided by the Defendant pursuant to this agreement against the Defendant at sentencing or as the basis for further prosecution, except as provided below.

Exceptions: (A) Absent written modification, this agreement not to use statements does **not** apply to information pertaining to any death, sexual assault, murder or felony crime of violence; (B) Statements or information may be used in: (I) cross-examination or rebuttal in any proceeding in which the Defendant makes a statement; (ii) any prosecution against the Defendant for perjury, making false statements, or obstruction of justice; (iii) in response to any motion or pleading made by the Defendant where the information is relevant to an issue raised by the Defendant; (iv) for any purpose if the Defendant breaches this agreement; or (v) submission to the Court or Probation Office for any purpose other than calculating the advisory Guideline range or determining appropriate sentence.

2. At the time of sentencing, and after the imposition of sentences if the U.S. Attorney's Office determines that circumstances warrant, the government will make known to the sentencing court the nature and extent of the Defendant's cooperation and assistance to law enforcement authorities. It is within the sole discretion of the U.S. Attorney's Office to determine whether to file motions pursuant to 18 U.S.C. § 3553(e), U.S.S.G. 5K1.1, and/or Rule 35, Federal Rules of Criminal Procedure, requesting the sentencing court to depart from a supervisory guidelines range, impose sentence below a mandatory punishment, or reduce a sentence already imposed, and if so, the extent of such departure, variance or reduction of sentence. The Defendant understands that the decision to seek a reduced

6

sentence is not contingent upon the conviction of any other person, and further, that the extent of any departure, variance or reduction of sentence is within the sole discretion of the Court.

## Government's Agreement

In exchange for Defendant's agreement to plead guilty, waive the rights listed above, and to cooperate, the United States Attorney's Office for the Western District of Texas agrees to the following:

**Forebear Filing Charges:** The government agrees that it shall not pursue additional charges against the Defendant that arise from the facts surrounding the commission of this offense and which are known or which reasonably could have been known to the U.S. Attorney's Office prior to entering this plea bargain agreement, or which are disclosed by the Defendant during his truthful debriefing or cooperation with the U.S. Attorney's Office.

**Sentencing:** Subject to the government's obligation to provide all relevant information to the sentencing court, and to the extent consistent with that information, the government agrees as follows:

**Acceptance of Responsibility:** The government will recommend that the Defendant receive a three level downward adjustment for acceptance of responsibility.

**Sentence Recommendation:** The government will recommend that the Court impose a sentence at the low end of the Sentencing Guideline range found by the Court.

**Forfeiture:** In the interests of providing full restitution to the victims of this offense, the Government will forgo any forfeiture as set out in the indictment.

7

Regarding the imposition of sentence, the Defendant understands that the Court decides the punishment that will be imposed. The Court shall determine the sentence to be imposed in accordance with 18 U.S.C. § 3553(a), after considering the application of the Sentencing Guidelines. The Guidelines are advisory and not binding, although the Court is required to consider them. **Any prediction or estimate of the probable sentencing range or ultimate sentence that may be imposed, whether from the government, his/her attorney, or the Probation Office, is not a promise, is not binding, and is not an inducement for the Defendant's guilty plea or waivers. The Defendant will not be permitted to withdraw his guilty plea because the sentence imposed differs from the sentence he/she expected or hoped for.**

Notwithstanding the above provisions, both the government and the Defendant reserve the rights to: (1) inform the U.S. Probation Office and the Court of all information relevant to determining sentence; (2) dispute facts relevant to sentencing; (3) seek resolution of disputed facts or factors in conference with opposing counsel and the U.S. Probation Office; (4) allocute at sentencing (consistent with promises by the government concerning recommended findings and punishment); and (5) request the Court to depart from the applicable supervisory guideline range based upon aggravating or mitigating factors.

### Breach of Agreement

In the event the Defendant violates or breaches any of the terms of the plea agreement, including his agreement to cooperate, the government will be released from its obligations under this agreement and in its sole discretion may do any or all of the following:

1. Move to set aside the Defendant's guilty plea and proceed on charges previously filed and any additional charges;

8

2. Use against the Defendant any statements or information provided by Defendant during the course of his cooperation, at sentencing or in any prosecution;

3. Seek additional charges based on false statements, perjury, obstruction of justice, or any other criminal acts committed by Defendant before or during his cooperation, including offenses disclosed during Defendant's cooperation;

4. Seek to revoke or modify conditions of release;

5. Decline to file a motion for a reduced sentence.

Defendant's breach of this agreement will not entitle him to withdraw a guilty plea already entered.

## Factual Basis for the Guilty Plea

If the Defendant went to trial on the charge to which he agrees to plead guilty, the Defendant agrees that the government's evidence would prove the following, establishing proof beyond a reasonable doubt of each of the elements of the crime charged:

In 2006, ARMANDO JESUS HERNANDEZ LEAL (hereinafter HERNANDEZ) presented Mario Saldivar (hereinafter M. Saldivar) with what HERNANDEZ purported to be an investment opportunity through the company, Investment Professionals, Inc. (IPI) located in San Antonio, Texas. HERNANDEZ told M. Saldivar that Sunport Capital, an investment firm which HERNANDEZ claimed that he had 15% ownership in, would service M. Saldivar's account with IPI. The trust M. Saldivar had in HERNANDEZ was instrumental in Saldivar's decision to invest with IPI through Sunport Capital. In 2006, M. Saldivar invested $500,000.

M. Saldivar made subsequent investments with IPI through HERNANDEZ. In addition, M. Saldivar's two brothers, Jorge Saldivar and Fernando Saldivar, also businessmen, decided to invest with HERNANDEZ. M. Saldivar's mother Myrthala Saldivar and M. Saldivar's brother-in-law, Jorge Calderon, also invested with HERNANDEZ. Between 2005 and 2014, M.

9

Saldivar and his family invested approximately $50 million with HERNANDEZ. During this time, HERNANDEZ emailed monthly account statements to M. Saldivar. The account statements were provided to M. Saldivar in an English language format. M. Saldivar's primary language is Spanish and he has limited understanding of English. Based on the account statements, M. Saldivar and his family continued to invest money with HERNANDEZ.

On or about November 4, 2013, M. Saldivar received an email from HERNANDEZ's gmail account containing an attached Account Statement for M. Saldivar's company, Asser Global, Inc., for the month of October 2013. The Account Statement had an IPI letterhead and listed Sunport Capital as the office servicing the account and Pershing Securities Corp. as the clearance agent. The Account Statement provided a listing of the asset allocation, portfolio holdings, and transactions for M. Saldivar's investment. M. Saldivar's margin debt was listed as $65 million on the first page of the statement. The margin debt had a 6% interest rate. HERNANDEZ led M. Saldivar to believe he owed monthly interest payments on this margin debt that had been extended to him by Pershing Securities Corp. In fact, and unknown to M. Saldivar, the Account Statement attached to the email was fraudulent in its entirety and had been manufactured by HERNADNEZ to induce M. Saldivar's payments.

On or about November 13, 2013, M. Saldivar sent a wire transfer from his bank account in Mexico in the amount of $50,000 to a Frost Bank account owned by Capital in Movement, LLC. Capital in Movement is a company that is controlled by HERNANDEZ. On or about November 14, 2013, M. Saldivar sent a wire transfer from his bank account in Mexico in the amount of $50,000 to the Capital in Movement, LLC account. These wire transfers represented a portion of the monthly interest payments on the margin debt M. Saldivar believed had been extended to him by Pershing Securities. M. Saldivar believed Capital in Movement, LLC was collecting these

10

payments as an Advisor of Sunport Capital. M. Saldivar expected these interest payments to be made to Pershing Securities.

In 2014, HERNANDEZ subsequently admitted that he had been committing a fraud on the Saldivar family and that he was responsible for the loss of the Saldivar family funds. HERNANDEZ asked M. Saldivar for forgiveness and requested he take care of HERNANDEZ's wife and children. M. Saldivar told HERNANDEZ he was forgiven, but requested a settlement be handled through their attorneys. On September 12, 2014, HERNANDEZ sent a formal confession from his HERNANDEZj.hernandez@gmail.com email account to members of the Saldivar family and his wife, which read as follows [Email has been translated from Spanish to English]:

"Dear family,

I would like to offer you an apology and admit to the following:

1. I asked you to send money through accounts in Mexico and the United States to have it invested in your accounts.

2. The money was not invested in any way.

3. The investments shown on the statements sent to your email addresses do not exist, nor are they under the company shown in the statement.

4. I prepared the statements and they are completely false.

5. I used the money for my personal benefit.

6. I 'm willfully preparing this statement to avoid publicity and your filing a criminal complaint. I promise I will give you back your money in cash, assets, and properties. This transfer will start on Monday, September 15, 2014.

7. First thing on Monday, I will talk to Atty. Briseno to initiate the transfers and process.

11

Sincerely,

Armando J. Hernandez"

Examination of the bank records has determined that HERNANDEZ directed M. Saldivar and other members of his family to deposit money into an account at Frost Bank entitled the "Capital in Movement" account. The Capital in Movement account belonged to Capital in Movement LLC, a company established by HERNANDEZ. Gregorio Medina (Medina) and Jessica Castillo (Castillo), employees of HERNANDEZ, were the signatories for this account. Once money was deposited, HERNANDEZ would direct the transfer of the money to other entities, most often to two other Frost bank accounts; one belonging to Regina Capital Investment LLC (Regina), and the other belonging to Corporate Values Management, LLC (Corporate Values). Regina was formed by Medina. Medina and Castillo are listed as the managers and accountant Juan Carlos Almanza (Almanza) is listed as the registered agent. Similarly, Corporate Values was formed by Medina. Medina and Castillo are listed as the managers and Almanza is listed as the registered agent. Although Medina and Castillo were employees of HERNANDEZ at the time that the companies were formed and the accounts were opened at Frost Bank, HERNANDEZ's name is not associated with the paperwork for either the companies or the accounts during this period and his ownership interest is concealed.

Once money was transferred from the Capital in Movement account to either the Regina or Corporate Values accounts, the money would then be used to pay the personal expenses of HERNANDEZ, including loans, meeting payroll, paying Verizon and AT&T bills, utility and credit card bills, and transfers to other of HERNANDEZ's personal accounts. The Regina and Corporate Values accounts were designed solely to conceal the transfer of money from the Capital in Movement account to HERNANDEZ's personal use.

12

On November 27, 2013, HERNANDEZ directed that $37,000.00, money previously received through the fraudulent scheme from M. Saldivar, be transferred from the Capital in Movement account to the Regina account. The transfer was accomplished on that date and the money was subsequently used to pay HERNANDEZ's personal debts.

HERNANDEZ was aware that the funds being transferred to the Regina account on the date in question were the proceeds of a specified unlawful activity, to wit: wire fraud. He knowingly conducted the transaction with the intent to conceal the true source, ownership and control of the proceeds.

## Voluntariness

In entering into this Plea Bargain Agreement, agreeing to plead guilty, and waiving the rights set forth above, the Defendant affirms the following:

1. The Defendant has discussed with his attorney the charges, the possible punishment upon conviction, the evidence and any defenses to the charges, and the benefits and risks of going to trial.

2. The Defendant understands that he has a right to plead not guilty, and by entering this agreement and pleading guilty he is waiving or giving up a number of important rights, described above.

3. The Defendant has had sufficient time to discuss the case with his attorney, and is satisfied with the advice given by counsel.

4. The Defendant is not under the influence of alcohol, drugs or medicines and understands the gravamen of the proceedings and the importance of the decision to plead guilty and waive rights.

13

5. The Defendant enters this agreement and decision to plead guilty voluntarily, and not on account of force, threats, promises or inducements, apart from the promises and inducements set forth in this agreement.

6. The Defendant agrees to plead guilty because he is guilty of the offense charged.

**Entire Agreement**

This Plea Bargain Agreement constitutes the entire agreement between the Defendant and the United States Attorney's Office and is binding only upon those parties. No other promises, inducements or agreements have been made or entered into between the parties. The Court may accept or reject this agreement, and may defer this decision until it has reviewed the pre-sentence report. If the Court accepts the agreement, but declines to follow the government's sentencing recommendations, the Defendant has no right to withdraw his guilty plea.

20 August 2015
_____
DATE

_____
GREGORY J. SUROVIC
Assistant United States Attorney

8/20/2015
_____
DATE

_____
ALFONSO CABANAS
Attorney for Defendant

8-20-2015
_____
DATE

_____
ARMANDO JESUS HERNANDEZ LEAL
Defendant

14